**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ROBIN FULLER,

**Plaintiff,**

v.

                                 **5:21-CV-66**
                                 **(FJS/ATB)**

AUBURN MEMORIAL MEDICAL
SERVICES, P.C.,

**Defendant.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **GATTUSO & CIOTOLI, PLLC**<br>The White House<br>7030 East Genesee Street<br>Fayetteville, New York 13066<br>Attorneys for Plaintiff | **RYAN G. FILES, ESQ.** |
| **BOND, SCHOENECK & KING, PLLC**<br>One Lincoln Center<br>Syracuse, New York 13202<br>Attorneys for Defendant | **ADAM P. MASTROLEO, ESQ.**<br>**NICHOLAS P. JACOBSON, ESQ.** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

Plaintiff worked for Defendant as a physician's assistant at Urgent Care of Auburn

("UCoA") from the time that Defendant acquired the facility in October 2016 until Defendant

terminated him on April 23, 2019. *See* Dkt. No. 1, Compl., at ¶¶ 8-9, 30. Plaintiff alleges that,

at the time of his termination, he was a 58-year-old male of Mohawk heritage, thus making him

the oldest, most diverse, and only male employee at UCoA.  *See id.* at ¶¶ 12-15, 19.  Plaintiff

claims that this often made him feel "very uncomfortable and isolated," and, on occasion,

"embarrassed, excluded, marginalized and alienated[.]"  *See id.* at ¶¶ 16-17.  Specifically,

Plaintiff alleges that he complained to his supervisors in October and December of 2017, about

"hostile incidents and demeaning treatment" he experienced around a coworker, Kim Henry,

N.P.  *See id.* at ¶ 21.  Following a schedule change in March 2018, Plaintiff believed that he and

Ms. Henry had "resolved" their issues, but he later learned that just two months before his

termination Ms. Henry and Practice Manager Blythe Fawcett approached another coworker,

Sarah Benton, N.P., stating that they were "looking for dirt" on him.  *See id.* at ¶¶ 24, 26.

Plaintiff further alleges that, on April 10, 2019, he was involved in an incident in which

he attempted to examine a small child who did not want to be examined, and he grew very

frustrated and expressed his frustration to his coworkers.  *See id.* at ¶¶ 30-32.  Following that

incident, Defendant suspended Plaintiff without pay and ultimately terminated his employment

"based on alleged patient complaints of what amounted to, at most, as simply dissatisfaction

with plaintiff's bedside manner[.]"  *See id.* at ¶¶ 11, 30, 36.  Plaintiff believes that Defendant

pretextually relied on those alleged "patient complaints" to cover up "discriminatory and

retaliatory reasons" to target him.  *See id.* at ¶ 11.  To support this claim, Plaintiff points to his

complaints about Ms. Henry, as well as his role as a confidante to an employee who was

pursuing sexual harassment charges against Defendant.  *See id.* at ¶¶ 28-29, 59-61.

After his termination, Plaintiff filed a complaint with the New York State Division of

Human Rights ("NYSDHR") on June 4, 2019, which was duly filed with the Equal

Employment Opportunity Commission ("EEOC").  *See generally* Dkt. No. 8-1, NYSDHR

Compl.  Both administrative agencies dismissed Plaintiff's complaint and informed him of his

right to sue.  *See* Dkt. No. 1-1, Ex. 1, at 2; Dkt. No. 8-1 at 11.  Plaintiff also applied for

unemployment benefits, for which he was initially denied; but an Administrative Law Judge

("ALJ") for New York's Unemployment Insurance Appeal Board ("the Board") reversed,

finding that the conduct for which Defendant terminated Plaintiff was not "misconduct" under

New York's Unemployment Insurance Law.  *See* Dkt. No. 1-5, Ex. E.  Plaintiff then

commenced this action on January 19, 2021, alleging the following four causes of action:

    (1) Unlawful discrimination under Title VII in the form of a hostile work environment;

    (2) Unlawful retaliation under Title VII;

    (3) Breach of implied contract with respect to Defendant's termination of his
        employment; and

    (4) Breach of implied contract with respect to Defendant's declining to award Plaintiff
        his vested paid benefit time and his salary.

*See* Dkt. No. 1 at ¶¶ 51-85.

    Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint in its

entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 8.


## II. DISCUSSION

### A.  Motion to dismiss standard

    "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure, the court must accept the material facts alleged in the complaint as true and

draw all reasonable inferences in the plaintiff's favor."  *LMC Indus. Contrs. v. Dominion Energy*

*Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3

(N.D.N.Y. Aug. 24, 2021) (Scullin, S.J.) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l*

*Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)).  However, the court is not required

to credit legal conclusions, bare assertions, or conclusory allegations.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 678-81 (2009) (citations omitted).  As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  Therefore, under this standard, a plaintiff must support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  Thus, if the plaintiff has not "'nudged [his] claims' . . . 'across the line from conceivable to plausible,'" the court must dismiss the complaint.  *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

### B.  Whether Plaintiff plausibly stated a hostile work environment claim

It appears that Plaintiff's first cause of action alleges a hostile work environment claim based on his age, gender, and ethnicity, pursuant to Title VII. *See generally* Dkt. No. 1 at ¶¶ 51-56.  "Before an aggrieved party can assert a Title VII claim in federal court, he is generally required to exhaust the administrative remedies provided by the statute." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (citing *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015)).  "That is, a Title VII plaintiff generally must file a charge of discrimination with the EEOC 'within three hundred days after the alleged unlawful employment practice occurred,' . . . and must then file an action in federal court within 90 days of receiving a right-to-sue letter from the agency[.]" *Id.* (quoting 42 U.S.C. § 2000e-5(e)(1), (f)(1) (internal citations omitted)).  In Plaintiff's complaint to the NYSDHR, which was duly filed with the EEOC on June 5, 2019, he alleged discrimination with respect to his age, gender, and ethnicity.

*See generally* Dkt. No. 8-1.  Specifically, he alleged in that complaint that "his age and gender may have played a role in his termination" and that his Native American status "may also have been a factor[.]"  *See id.* at ¶¶ 5-12.  Both administrative agencies dismissed his complaint, and the EEOC informed Plaintiff of his right to sue on October 20, 2020.  *See* Dkt. No. 1-1, at 2; 8-1, Ex. B, at 11.  Plaintiff filed his complaint in this action on January 19, 2021, which was within 90 days of receiving the right-to-sue letter.  *See* Dkt. Nos. 1, 1-1.  Thus, the Court finds that Plaintiff adequately exhausted his administrative remedies and timely commenced this action with respect to his Title VII claim alleging a hostile work environment based on his gender and ethnicity.

Turning to the merits, "[t]o establish a hostile work environment claim, a plaintiff must show, *inter alia*, that 'the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment.'" *Montanez v. McDean LLC*, 770 F. App'x 592, 594 (2d Cir. 2019) (summary order) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) (internal quotation marks and brackets omitted)).  "Plaintiff must also show that the hostile conduct occurred because of a protected characteristic."  *Rosenfield v. New York State Div. of Veterans' Affairs*, No. 1:18-CV-1299 (GTS/CFH), 2019 U.S. Dist. LEXIS 162633, *44 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.) (citing *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015)).  "'[A] mild, isolated incident does not make a work environment hostile.'"  *Montanez*, 770 F. App'x at 594 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (internal quotation marks omitted)).  Notably, on a motion to dismiss brought pursuant to Rule 12(b)(6), "the plaintiff is only required to plead facts sufficient to support a finding that []he encountered harassment that adversely altered h[is] employment conditions in the eyes of a reasonable person, which is not a high bar."  *Rys v.*

*Grimm*, No. 6:19-CV-1251 (FJS/ATB), 2021 U.S. Dist. LEXIS 40519, *9 (N.D.N.Y. Mar. 4, 2021) (Scullin, S.J.) (citation omitted).

In Plaintiff's complaint, he generally alleged that "[b]ased on his age and tenure of employment, Plaintiff was the most 'senior' PA and medical staff person at the UCoA," and that he was also "in essence, the only male employee among the workplace staff[.]" *See* Dkt. No. 1 at ¶¶ 13-14.  Plaintiff further alleged that, "[a]t times while working at UCoA, Plaintiff felt very uncomfortable and isolated as an older male in what was essentially an all-female work environment." *See id.* at ¶ 16.  On occasions, Plaintiff felt "embarrassed, excluded, marginalized and alienated by the otherwise all-female staff." *See id.* at ¶ 17.  Plaintiff also noted that he was "part Native American, with a proud heritage of the Mohawk nation, which was well known to Plaintiff's co-workers[.]" *See id.* at ¶ 19.

After describing his personal traits, Plaintiff alleged that, in October and December 2017, he complained to former practice manager, Brenda Somes and his supervisor, Dr. Mark McSwain, "about concerns of hostile incidents and demeaning treatment he was receiving" from Ms. Henry.  *See id.* at ¶¶ 21-22.  According to Plaintiff, the issues were addressed in a meeting held among Plaintiff, Ms. Henry, Ms. Somes, and Defendant's former representative, Valerie Collins; and it was decided that, starting in March 2018, Plaintiff and Ms. Henry would no longer work together on a regular basis.  *See id.* at ¶¶ 23-24.  Plaintiff admits that, by all indications, the schedule change resolved the matter.  *See id.* at ¶ 24.  Notwithstanding this, Plaintiff alleges that he recently learned before filing his complaint that, in February 2019, approximately two months before he was terminated, Ms. Henry and Ms. Fawcett approached Ms. Benton and expressly told her that they were "looking for dirt" on Plaintiff.  *See id.* at ¶ 26.  Plaintiff alleges that they were targeting him "for personal and retaliatory reasons" and "looking

for any excuse to see to it that Plaintiff be disciplined and terminated." *See id.* at ¶ 27.  Plaintiff also alleged that, another former coworker and nurse practitioner, Daniel Dennis, also complained of sexual harassment against Defendant, Auburn Community Hospital, and a doctor who worked there; and Mr. Dennis allegedly "confided in Plaintiff about his complaints, his harassment case, and what was taking place at work." *See id.* at ¶¶ 28-29.

Initially, the Court finds that Plaintiff has not alleged that his workplace was permeated with discrimination, intimidation, or that the discriminatory conduct was so "severe or pervasive" as to alter the conditions of Plaintiff's work environment.  Plaintiff does not describe in what ways he felt that Ms. Henry was demeaning toward him or what constituted the "hostile incidents" of which he complained to his supervisors.  Furthermore, Plaintiff admitted that he believed those incidents were resolved after a meeting and scheduling change.  It is also impossible to tell from Plaintiff's complaint whether Ms. Henry was demeaning to him because of his gender or ethnicity.

With respect to the comment that Ms. Henry and Ms. Fawcett were "looking for dirt" on him, Plaintiff admits that he did not learn of that comment until shortly before filing his complaint – and, thus, long after he was terminated – and that comment was made to Ms. Benton, not to Plaintiff.  In addition, as noted above, isolated discriminatory remarks or incidents of misconduct do not amount to "severe and pervasive" harassment in the workplace. Plaintiff also failed to allege in the complaint that those individuals were "looking for dirt" on him *because of* his gender or ethnicity.

Additionally, although Plaintiff contends that he acted as a confidante to Mr. Dennis regarding Mr. Dennis's sexual harassment claims, Plaintiff did not identify when this happened or how his learning of Mr. Dennis's claims would cause him severe and pervasive harassment.

In fact, Plaintiff does not allege that he was discriminated against at all because of his knowledge of Mr. Dennis's claims or that Defendant or its employees were even aware that he knew about Mr. Dennis's case. Plaintiff also failed to allege that any discriminatory conduct, if it existed, was targeted toward him because of his gender and ethnicity rather than some other factor, such as that he acted as a confidante to someone complaining about harassment.

Finally, Plaintiff alleged that he was "uncomfortable" and felt "isolated" because he was an older male and that he was occasionally "embarrassed" or "excluded" by the all-female staff, but he does not describe why he felt that way or what actions or statements the all-female staff made to make him feel uncomfortable. Simply alleging that he felt uncomfortable as the only male, without alleging something that others had done to make him feel that way, is not sufficiently severe or pervasive to give rise to a hostile work environment. *See Williams v. Cnty. of Westchester*, 171 F.3d 98, 101 (2d Cir. 1999) (holding that an employee's "generalized feelings of discomfort fell well short of the proof required to show a hostile work environment"). Furthermore, with respect to Plaintiff's ethnicity, he merely alleged that he was part Native American with a proud Mohawk heritage and that his coworkers knew that. He never alleged that they harassed him or treated him poorly because of his ethnicity, that they used slurs, or that they otherwise acted in a discriminatory manner because of his race.

For all of the above-stated reasons, the Court finds that Plaintiff has failed to allege severe or pervasive conduct creating a hostile work environment or that any such conduct, if it existed, was a result of his male gender or identity as a Native American.[1] Thus, the Court

---

[1] The Court further notes that Plaintiff's complaint did not allege any facts to support a finding that he was discriminated against because of his age or that a hostile work environment existed because he was the oldest employee working at UCoA. Additionally, Plaintiff specifically alleged Title VII violations in his complaint and did not allege discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* "Title VII does not

further finds that Plaintiff has failed to allege sufficient facts to state a plausible claim that he was subjected to a hostile work environment.  Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's first cause of action.

### C.  Whether Plaintiff plausibly stated a retaliation claim

As discussed above with respect to Plaintiff's first cause of action, Title VII requires that he exhaust his administrative remedies for this claim before the NYSDHR and EEOC prior to filing his complaint in federal court.  *See Duplan,* 888 F.3d at 621.  Initially, the Court finds that Plaintiff did not exhaust his administrative remedies with respect to his retaliation claim.  In his second cause of action, Plaintiff alleged that he "engaged in protected activities when he issued a formal and/or informal discriminatory complaint to his superiors about ongoing hostile treatment he was receiving by a female colleague at the UCoA, and for being an indirect witness to a former employee's claims of sexual harassment against [Defendant.]"  *See* Dkt. No. 1 at ¶ 59.  Plaintiff further alleged that "the individuals involved in the complained of incidents and conduct continued to target Plaintiff afterward in an effort to find any claims they could use to have him be disciplined and terminated from [Defendant]."  *See id.* at ¶ 61.  Thus, based on the face of Plaintiff's complaint, it appears that he is alleging that Defendant terminated him for complaining about Ms. Henry's demeaning treatment toward him and because Mr. Dennis confided in him about his sexual harassment complaint.

---

cover discrimination claims predicated on age[.]"  *Buczakowski v. 1199SEIU*, No. 5:18-CV-0812 (LEK/ML), 2020 U.S. Dist. LEXIS 76931, *6 (N.D.N.Y. May 1, 2020) (Kahn, S.J.) (citing *Tiffany v. Dzwonczyk*, 696 F. App'x 7, 9 (2d Cir. 2017) [(summary order)] (citing *General Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 586, 124 S. Ct. 1236, 157 L. Ed. 2d 1094 (2004))).

However, in Plaintiff's complaint with the NYSDHR, duly filed with the EEOC, Plaintiff specifically alleged that he was terminated "based on alleged patient complaints[.]" *See* Dkt. No. 8-1 at ¶ 5.  Plaintiff did not mention prior complaints he had made to his supervisors about Ms. Henry's hostile or discriminatory treatment toward him.  *See generally id.* at ¶¶ 5-12.  Plaintiff claimed that he "may also have been targeted and ultimately terminated for other discriminatory non[-]work-related reasons," such as that he was the oldest employee, the only male, and his Native American heritage, but he did not allege that anyone had harassed him or discriminated against him and that he had complained about such harassment to Defendant.  *See id.* at ¶ 11.  Thus, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim to the extent that he alleged Defendant terminated him for complaining about Ms. Henry's treatment of him.

The Court comes to the same conclusion with respect to Plaintiff's alleged "witness retaliation."  Although he generally alleged such retaliation in the caption of his complaint to the NYSDHR, *see generally id.* at 4, he did not allege anywhere in that complaint that Defendant terminated him because he knew about Mr. Dennis's sexual harassment complaint, *see generally id.* at 4-6.  In fact, Plaintiff did not allege at all that Mr. Dennis confided in him regarding any claims against Defendant.  *See id.*  Since Plaintiff's second cause of action alleged retaliation only because he complained about Ms. Henry's harassment and because he acted as Mr. Dennis's confidante, and he did not raise either of those issues in his NYSDHR complaint, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to his second cause of action.  Therefore, the Court dismisses Plaintiff's retaliation claim on this basis.

Notwithstanding the fact that Plaintiff did not exhaust his administrative remedies with respect to this claim, the Court further finds that, even if he had, Plaintiff's claim for retaliation

- 10 -

fails because he did not show any connection between his termination and his engagement in a protected activity.  "[F]or a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated or took an adverse employment action against him, (2) because he has opposed any unlawful employment practice."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quotations omitted).  With respect to the first element, there is no dispute that Plaintiff suffered an adverse employment action when Defendant terminated his employment.  *See generally* Dkt. Nos. 8-2, 10.  *See also Avent v. Target Corp.*, No. 1:19-CV-1565 (NAM/CFH), 2021 U.S. Dist. LEXIS 136473, *12-*13 (N.D.N.Y. July 22, 2021) (Mordue, S.J.).  "As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity."  *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e-3(a)).  "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely by adverse employment action."  *Id.* (citations omitted).  "Unlike Title VII discrimination claims . . . for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action."  *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013)).

With respect to Ms. Henry, Plaintiff alleged that he complained about the "hostile incidents and [her] demeaning treatment" toward him in October and December of 2017.  *See* Dkt. No. 1 at ¶ 21.  Plaintiff admitted that he believed, as of March 2018, that the issues between them had "resolved."  *See id.* at ¶ 24.  Defendant did not terminate Plaintiff's employment until April 23, 2019, approximately 16 months after his complaints to Defendant regarding the alleged "hostile incidents" and 13 months after he believed the issue had been resolved.  *See id.* at ¶ 30.  The Second Circuit has found that a 16-month gap "is too long to

support a retaliation claim based solely on temporal connection." *Riddle v. Citigroup*, 640 F.

App'x 77, 79 (2d Cir. 2016) (summary order) (citations omitted).  Plaintiff also alleged a causal

connection by pointing out that Ms. Henry and Ms. Fawcett were supposedly "looking for dirt"

on him two months before Defendant terminated him, and approximately 14 months after he

had complained about Ms. Henry's alleged demeaning treatment toward him.  *See* Dkt. No. 1 at

¶ 26.  Without alleging more than this isolated comment made long after Plaintiff believed the

issue had been resolved, the Court finds that Plaintiff did not satisfy the second element to state

a retaliation claim.

In his memorandum in opposition, Plaintiff also relies on the ALJ's finding in his

unemployment insurance appeal that Defendant terminated him for conduct that did not amount

to misconduct, which Plaintiff asserts is "binding" on the Court.  Contrary to Plaintiff's

assertions, administrative agencies' findings are "not determinative," but are "admissible to help

establish [Plaintiff's] prima facie case." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481

(2d Cir. 1985) (citation omitted); *accord March v. First Choice Med. PLLC*, No. 2:17-cv-

04272-RRM-SIL, 2021 U.S. Dist. LEXIS 132207, *43 n.2 (E.D.N.Y. July 15, 2021).

Notwithstanding this, even if the Court were to accept that Defendant terminated Plaintiff in

April 2019 for conduct that did not rise to the level of "misconduct" for unemployment

insurance purposes, this does not establish that Plaintiff's termination was retaliation for

complaints he made in late 2017 about vaguely alleged "hostile incidents."  Accordingly, the

Court finds that Plaintiff has failed to state a claim for retaliation with respect to his complaints

about Ms. Henry.

Finally, with respect to Plaintiff's allegation that Defendant retaliated against him for his

position as Mr. Dennis's confidante, the Court finds that he abandoned that claim because he did

not address it in his memorandum of law.  *See* Dkt. No. 10 at 12-14; *see also Whitt v. Kaleida Health*, 298 F. Supp. 3d 558, 568-69 (W.D.N.Y. 2018).  In any event, as discussed above, Plaintiff did not specify how Mr. Dennis's confiding in him would cause Defendant to target him, nor did he allege that Defendant even knew that Plaintiff was aware of Mr. Dennis's harassment case.  Additionally, Plaintiff did not identify a month or year when Mr. Dennis allegedly confided in him, so there is no evidence of temporal proximity.  For these reasons, the Court grants Defendant's motion to dismiss Plaintiff's second cause of action for retaliation.

**D.  Whether Plaintiff plausibly stated two claims of breach of an implied contract**

In Plaintiff's third and fourth causes of action, he alleges that Defendant failed to follow its employee handbook ("the Handbook"), which sets forth that Defendant's employees would receive various warning notices about unsatisfactory performance before termination, and that employees would be entitled to all vested paid benefit time and salary unless terminated for "misconduct."  *See* Dkt. No. 1 at ¶¶ 75-85.

"New York recognizes an employee's action for breach of implied contract against an employer based on its written policies upon a showing that '(1) an express written policy limiting the employer's right of discharge exists, (2) the employer (or one of its authorized representatives) made the employee aware of this policy, and (3) the employee detrimentally relied on the policy in accepting or continuing employment.'"  *Gray v. GC Servs./Apple*, No. 1:20-CV-714 (TJM/ATB), 2020 U.S. Dist. LEXIS 249045, *19-*20 (N.D.N.Y. Dec. 9, 2020) (Baxter, M.J.) (quoting *Ubal-Perez v. Delta Air Lines Inc.*, No. 13-CV-2872, 2014 U.S. Dist. LEXIS 7280,[2] 2014 WL 223227, at *5 (E.D.N.Y. Jan. 21, 2014)).

---

[2] Although *Gray* cites to *Ubal-Perez* at 2014 U.S. Dist. LEXIS 7280, that citation is to the court's adoption of the report and recommendation.  The report and recommendation, where this

Although "'[p]olicies in a personnel manual specifying the employer's practices with respect to the employment relationship, including the procedures or grounds for termination, may become a part of the employment contract,' 'conspicuous disclaiming language' in an employee handbook 'preserves [the employer's] . . . at will employment relationship with' its employees as far as the provisions in an employee handbook are concerned.'" *Weiping Liu v. Indium Corp. of Am.*, No. 6:16-cv-01080 (BKS/TWD), 2019 U.S. Dist. LEXIS 137786, *71 (N.D.N.Y. Aug. 15, 2019) (Sannes, J.) (quoting *Baron* [*v. Port Auth.*], 271 F.3d [81,] 85, 87 [(2d Cir. 2001)] (quoting *Lobosco*, 96 N.Y.2d at 316-17)).  Disclaiming language such as an "explicit reservation of the right to unilaterally modify [the handbook's] policies at any time also renders any reliance on [the handbook] unreasonable." *Hanifan v. Jo-Ann Fabric & Craft*, No. 5:11-CV-0534 (LEK/TWD), 2013 U.S. Dist. LEXIS 132509, *16 (N.D.N.Y. Sept. 17, 2013) (Kahn, S.J.).  Courts in this district have additionally found that, where a written disciplinary policy states that an employee may be terminated after receiving a certain number of warnings, the plaintiff must allege that such policy imposed a limitation on the employer's right to terminate the employee at-will.  *See Gray*, 2020 U.S. Dist. LEXIS 249045 at *20-*21.

Neither party disputes that Plaintiff received a copy of the Handbook, which clearly states on the employee's signature page that the employee understands that "neither the handbook's policies nor any representations made by a management representative, at the time of hire or subsequently, are to be interpreted as a contract between [Defendant] and any of its employees." *See* Dkt. No. 1-3, Ex. C, at 31.  Relatedly, under a heading titled "Employment at Will," the Handbook provides that it "is not contractual in nature and is intended to serve as a

---

quotation is originally written, can be found at 2014 U.S. Dist. LEXIS 7398, *14 (E.D.N.Y. Jan. 2, 2014).

guideline only and is subject to change at any time at the discretion of [Defendant's] management and such changes will become effective as announced." *See id.* at 6.  That section further notes that "an employee's employment is 'at-will' which means that the employee may terminate the employment relationship at any time and for any reason with or without notice, and [Defendant] has the same right." *See id.*  The Handbook also provides that Defendant, "in its sole and absolute discretion, reserves the right to alter, amend, delete, terminate, or otherwise change the policies, benefits, information, or any of the provisions of [the Handbook] at any time[.]" *See id.* at 5.  The Court finds that such disclaimers made it clear that the Handbook did not bind the parties in a contractual relationship or alter Plaintiff's status as an at-will employee. The Court further finds that it was unreasonable both for Plaintiff to rely on the language in the Handbook to support his third and fourth causes of action, as it provides that Defendant may alter its terms at any time, and to allege that the Handbook limited Defendant's right to terminate its employees at-will.  Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's third and fourth causes of action for breach of an implied contract.


## III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss Plaintiff's complaint, *see* Dkt. No. 8, is **GRANTED**, and Plaintiff's complaint is dismissed in its entirety; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated:  February 16, 2022
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge